UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| ENJET, LLC., | |
| Plaintiff, | |
| and | In Admiralty |
| UNITED STATES OF AMERICA, | Civil No.: 1:10-cv-00228 |
| Intervening Plaintiff, | |
| v. | [Filed Pursuant to Rule 9(h) F.R.C.P.] |
| SS MONSEIGNEUR (O.N. 1046706), her masts, boilers, engines, tackle, apparel, etc., *in rem*, and | |
| AHL Shipping Company, *in personam*, | |
| Defendant. | |

UNITED STATES' COMPLAINT IN INTERVENTION
FOR FORECLOSURE OF FIRST PREFERRED SHIP MORTGAGE

The Complaint in Intervention of the United States of America alleges upon information and belief as follows:

1. This is a case within the admiralty and maritime jurisdiction of this Honorable Court, as hereinafter more fully appears, and Intervening Plaintiff's claims are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Intervening Plaintiff is the United States of America, a sovereign nation,

authorized to sue by 28 U.S.C. §1345.

3. At all times material hereto, the defendant vessel, SS MONSEIGNEUR (Official No. 1046706), its engines, boilers, lockers, machinery, masts, spars, rigging, boats, bunkers, electronics, anchors, cables, chains, tackle, tools, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and other appurtenances, etc., whether on board or not, and any and all additions, improvements, and replacements thereto (hereinafter, the "Vessel"), was a documented vessel of the United States operating in the coastwise trades, and is now, or during the pendency of this action will be, within the navigable waters of this District and within the jurisdiction of this Honorable Court.

4. At all times material herein, defendant AHL Shipping Company was and is a Delaware corporation, formally known as American Heavy Lift Shipping Company (hereafter, the "Shipowner"), which conducted business within the jurisdiction of this Honorable Court.

5. In order to partially finance the construction of the defendant Vessel and three sister ships, the Shipowner issued United States Government Guaranteed Ship Financing Bonds, 1995 Series, on May 12, 1995, pursuant to a Trust Indenture dated as of May 12, 1995 (as amended or supplemented, the "Trust Indenture") between the Shipowner and First National Bank of Commerce as indenture trustee (the "Indenture Trustee"), in the principal amount of $125,000,000 and at the interest rates set forth therein (the "1995 Series Obligations"). (A true and correct copy of the Trust Indenture is

attached hereto as Exhibit A and made a part hereof by this reference).

6.  Pursuant to the provisions of then Title XI of the Merchant Marine Act of 1936, as amended, now codified at 46 U.S.C. §§ 53701, *et seq.*, on May 12, 1995, the United States of America, represented by the Secretary of Transportation, acting by and through the Maritime Administrator (the "Secretary") guaranteed payment of the principal of and interest on the 1995 Series Obligations (the "Guarantee") in the event of default by the Shipowner under the terms of the Trust Indenture (the "Guarantee Transaction").

7.  As part of the Guarantee Transaction, on May 12, 1995, the Shipowner duly made, executed, and delivered to the Secretary a promissory note in the principal amount of the 1995 Series Obligations, bearing interest at the same rate as set forth in the 1995 Obligations, to be paid semi-annually on May 15, and November 15 of each year, commencing November 15, 1995, until maturity (as subsequently amended, modified or endorsed, the "Secretary's Note"). (A true and correct copy of the Secretary's Note is attached hereto as Exhibit B, and is incorporated herein and made a part hereof by this reference).

8.  The Secretary's Note is payable on the same terms and conditions as the 1995 Series Obligations, and any payment of the 1995 Series Obligations, other than by the Secretary, is a payment on the Secretary's Note.

9.  On December 18, 1996, in order to partially finance additional construction costs for the defendant Vessel and its three sister ships, the Shipowner issued United States Government Guaranteed Ship Financing Bonds, 1996 Series, pursuant to

Supplement No. 1 to Trust Indenture in the additional principal amount of $23,705,000 and at the interest rate set forth therein (the "1996 Series Obligations", and collectively with the 1995 Series Obligations, the "Obligations"). (A true and correct copy of Supplement No. 1 to Trust Indenture is attached hereto as Exhibit C and made a part hereof by this reference).

10. In connection with the issuance of the 1996 Series Obligations, on December 18, 1996, the Shipowner executed an Endorsement No. 1 to Promissory Note to increase the amount of the Secretary's Note to $148,705,000. (A true and correct copy of Endorsement No. 1 to Promissory Note is attached hereto as Exhibit D and made a part hereof by this reference).

11. As security for the due and timely payment of the Secretary's Note, the Shipowner executed and delivered a Security Agreement, Contract No. MA-13011, to the Secretary dated May 12, 1995 (as amended, the "Security Agreement"). (A true and correct copy of the Security Agreement is attached hereto as Exhibit E and made a part hereof by this reference).

12. On October 3, 1996, as additional security for the due and timely payment of the Secretary's Note and all amounts owing the Secretary under the Security Agreement, concurrent with the delivery of the sister vessel SS CAPTAIN H. A. DOWNING, the Shipowner executed and delivered to the Secretary a First Preferred Fleet Mortgage, Contract No. MA-13012, (as supplemented, the "Mortgage"). (A true and correct copy of the Mortgage is attached hereto as Exhibit F, and is incorporated

herein and made a part hereof by this reference).

13. Pursuant to the terms of the Mortgage, the Security Agreement, including all rights of the Secretary and all obligations of the Shipowner therein, are incorporated in full in said Mortgage and made a part thereof.

14. The First Preferred Fleet Mortgage was duly recorded in the National Vessel Documentation Center, United States Coast Guard (hereinafter "Documentation Office") in Book 96-87, Page 275, on October 3, 1996, at 8:20 a.m.

15. On December 18, 1996, the Shipowner executed a Supplement No. 1 to First Preferred Fleet Mortgage to increase the amount of the Mortgage in connection with the issuance of the 1996 Obligations. (A true and correct copy of Supplement No. 1 to First Preferred Fleet Mortgage is attached here to as Exhibit G, and is incorporated herein and made a part hereof by this reference).

16. Supplement No. 1 to First Preferred Fleet Mortgage was duly recorded in the Documentation Office in Book 96-109, Page 99, on December 18, 1996, at 10:50 a.m.

17. On January 16, 1997, the Shipowner executed a Supplement No. 2 to First Preferred Fleet Mortgage in connection with the delivery of another sister ship, the SS ANASAZI. (A true and correct copy of Supplement No. 2 To First Preferred Fleet Mortgage is attached hereto as Exhibit H, and is incorporated herein and made a part hereof by this reference).

18. Supplement No. 2 to First Preferred Fleet Mortgage was duly recorded in the Documentation Office in Book 97-05, Page 95, on January 16, 1997, at 2:55 p.m.

19. On June 5, 1997, the Shipowner executed a Supplement No. 3 To First Preferred Fleet Mortgage in connection with the delivery of the third sister ship, the SS NEW RIVER. (A true and correct copy of Supplement No. 3 to First Preferred Fleet Mortgage is attached hereto as Exhibit I, and is incorporated herein and made a part hereof by this reference).

20. Supplement No. 3 to First Preferred Fleet Mortgage was duly recorded in the Documentation Office in Book 97-30, Page 384, on June 5, 1997, at 10:20 a.m.

21. On September 22, 1997, the Shipowner executed Supplement No. 4 to First Preferred Fleet Mortgage in connection with the delivery of the Vessel, the SS MONSEIGNEUR, thereby subjecting that Vessel to the lien of the Mortgage. (A true and correct copy of Supplement No. 4 to First Preferred Fleet Mortgage is attached hereto as Exhibit J, and is incorporated herein and made a part hereof by this reference).

22. Supplement No. 4 to First Preferred Fleet Mortgage was duly recorded in the Documentation Office in Book 97-95, Page 344, on September 22, 1997, at 11:47 a.m.

23. On May 25, 2000, the Shipowner executed a Promissory Note to United States Of America in the amount of $9,042,002 (the "Guarantee Fee Note") in payment of certain guarantee fees due MARAD under the Security Agreement and the Mortgage. (A true and correct copy of the Guarantee Fee Note is attached hereto as Exhibit K, and is incorporated herein and made a part hereof by this reference).

24. On May 25, 2000, the Shipowner executed a Supplement No. 5 to First

Preferred Fleet Mortgage to increase the Mortgage to include the amount of the Guarantee Fee Note. (A true and correct copy of Supplement No. 5 to First Preferred Fleet Mortgage with attached Amendment No. 1 to Security Agreement is attached hereto as Exhibit L, and is incorporated herein and made a part hereof by this reference).

25. Supplement No. 5 to First Preferred Fleet Mortgage was duly recorded in the Documentation Office in Book 00-50, Page 241, on May 25, 2000, at 10:55 a.m.

26. On August 6, 2004, the Shipowner executed Supplement No. 2 to Trust Indenture to supplement the Trust Indenture in connection with a restructure of the 1995 Series Obligations to lower the interest rate thereon from 7.58% to 5.382%. (A true and correct copy of Supplement No. 2 to Trust Indenture is attached hereto as Exhibit M, and is incorporated herein and made a part hereof by this reference).

27. On September 1, 2004, the Shipowner executed Supplement No. 3 to Trust Indenture to supplement the Trust Indenture in connection with a restructure of a portion of the 1996 Series Obligations to lower their interest rate from 7.18% to 5.382%. (A true and correct copy of Supplement No. 3 to Trust Indenture is attached hereto as Exhibit N, and is incorporated herein and made a part hereof by this reference).

28. The Secretary's Note incorporates by reference the provisions of the Security Agreement and the Mortgage, and the Mortgage, in turn, incorporates by reference the provisions of the Security Agreement with the exception of the granting clauses.

29. The Secretary has taken all action necessary to establish and impose a

preferred ship mortgage lien on the defendant Vessel herein, and has not waived the preferred status of the Mortgage. (A true copy of United States Coast Guard Form 1330, Certificate of Ownership, is attached hereto as Exhibit O).

30. On December 1, 2009, the Shipowner failed to make the debt service payment due on the Secretary's Note and the Guarantee Fee Note.

31. On January 25, 2010, the Indenture Trustee, on behalf of the bondholders, demanded payment of all interest and principal due and owing on the Obligations from the Secretary under the Guarantees. (A true and correct copy of the Indenture Trustee's demand letter is attached hereto as Exhibit P, and is incorporated herein and made a part hereof by this reference.)

32. On February 24, 2010, the Secretary made payment to the Indenture Trustee on behalf of the bondholders in the amount of $91,043,890.31 which was the full amount of the interest and principal due and owing on the Obligations at that time. (A true and correct copy of proof of that payment is attached hereto as Exhibit Q, and is incorporated herein and made a part hereof by this reference.)

33. By letter dated February 24, 2010, the Secretary: a) notified the Shipowner of the Trustee's demand for and payment of the Obligations under the Guarantee and of the Secretary's payment of the principal of and interest on the Obligations; b) accelerated the maturity of the principal of and interest on the Obligations and the Guarantee Fee Note; and c) demanded immediate payment of the Secretary's Note and the Guarantee Fee Note, but, although duly demanded, said payments have not been made. (A true and

correct copy of this letter is attached hereto as Exhibit R, and is incorporated herein and made a part hereof by this reference.)

34. A failure to make payment of the Obligations constitutes a Default under the Mortgage and the Security Agreement, and, upon the aforementioned payment by the Secretary under the Secretary's Guarantee of the Obligations, constitutes a default under the Secretary's Note.

35. Upon a default under the terms of the Mortgage and payment of the Guarantee by the Secretary on behalf of the United States, the Secretary has the right to exercise all of its *in rem* rights and remedies as provided in the Mortgage, including the right to foreclose pursuant to the United States Code, Chapter 313 of Title 46.

36. The amount the Shipowner owes the Secretary is detailed, as to amount and date, in a statement prepared by the Office of Accounting, Maritime Administration, U.S. Department of Transportation (the "Accounting"), and is increasing by the amount of $13,966.64 *per diem*. (See Declaration of Kenneth T. Kirwan, which is attached hereto as Exhibit S, and is incorporated herein and made a part hereof by this reference.)

37. The Shipowner's defaults have not been cured, the Shipowner remains in default and the sums due and owing the United States remain unpaid.

WHEREFORE, Intervening Plaintiff, United States of America, prays:

1. That actual notice of the commencement of this suit, in the manner approved by the Court, be given as specified, to any person, firm or corporation which has recorded a notice of claim of any undischarged lien upon any of the Vessels;

2.	That, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims (as amended), this Honorable Court enter an order authorizing a warrant for the arrest of the Vessel;

3.	That a warrant be issued for the arrest of the Vessel, together with its boilers, engines, machinery, masts, spars, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc., whether on board or not;

4.	That Intervening Plaintiff be declared the holder of a valid preferred ship mortgage lien on the Vessel, to the extent of its claims herein;

5.	That judgment of condemnation and sale be entered against the Vessel, its boilers, engines, machinery, masts, spars, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc., to said Vessel, whether on board or not, and all additions, improvements, renewals, and replacements made to the Vessel;

6.	That an order for interlocutory sale of the Vessel be issued pursuant to Supplemental Admiralty Rule E(9)(b).

7.	That the Vessel be sold and the proceeds of the sale of the Vessel, its boilers, engines, machinery, masts, spars, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc., be applied first to costs and expenses associated with this action and then applied to payments of the 2006 Secretary's Note and

the Guarantee Fee Note, and the Mortgage, together with interest thereon;

8. That the Court order judgment in favor of the Intervening Plaintiff against the Vessel, its boilers, engines, machinery, masts, spars, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc., *in rem*, for all sums due and owing to the Secretary, for all insurance premiums and other care and preservation costs for the Vessel paid by the Intervening Plaintiff after the date of the commencement of this action, for reasonable attorney's fees, and for the costs of this suit incurred herein;

9. That defendant AHL Shipping Company, the Shipowner, be adjudged liable to Intervening Plaintiff for the sum of $91,043,890.31, which was the amount of principal and interest due and owing under the Secretary's Note as of February 24, 2010; plus $5,073,099.31 as principal of and interest on the Guarantee Fee Note as of February 24, 2010, plus all other sums accruing since that date, including, but not limited to, capitalized interest at the rate of $13,966.64 *per diem*, plus attorney's fees, costs, and disbursements, and any and all sums expended by Intervening Plaintiff for insurance premiums and other vessel care and preservation costs since said date;

10. That the proceeds, net to Intervening Plaintiff United States of America, of the sale of the defendant Vessel or of any other property of the defendant Shipowner be credited against the *in personam* judgment entered herein;

11. That the Court decree that any person, firm or corporation claiming any interest in the Vessel or against the Vessel, its boilers, engines, machinery, masts, spars,

rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc., be forever barred and foreclosed as to any right, equity of redemption, claim or lien in or against said Vessel, and every part thereof; and

12. The Cost of the Suit herein; and

13. That Intervening Plaintiff have such other and further relief as may be just and proper.

    Respectfully submitted,

    TONY WEST
    Assistant Attorney General

    JOHN MALCOLM BALES
    United States Attorney

       s/ Peter G. Myer
    PETER G. MYER
    Senior Trial Counsel
    MICHAEL W. KERNS
    Trial Attorney
    Torts Branch, Civil Division
    U.S. Department of Justice
    Post Office Box 14271
    Washington, DC 20044-4271
    Texas Bar No: 14756600
    Telephone: (202) 616-4043
    Facsimile: (202) 616-4159
    Email: peter.myer@usdoj.gov

## VERIFICATION

PETER G. MYER says:

I am a Senior Trial Counsel in the Torts Branch, Civil Division, U. S. Department of Justice, and one of the attorneys for Intervening Plaintiff United States of America herein, and make this verification by authority for and on its behalf; I have read the foregoing Complaint in Intervention for foreclosure, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

DATED: April 22, 2010

                                                        S/ Peter G. Myer
                                                        PETER G. MYER

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on April 22, 2010, the foregoing document was filed with the Clerk of Court and served electronically upon the following counsel:

| | |
|---|---|
| Christina Marie Putman | W. Eugene Miller |
| Seyfarth Shaw LLP | K&L Gates LLP |
| 700 Louisiana, Suite 3700 | 1601 K Street NW |
| Houston, TX 77002 | Washington, DC 20006-1600 |
| cputman@seyfarth.com | eugene.miller@klgates.com |

J. Stephen Simms
Simms, Showers LLP
20 South Charles Street, Suite 702
Baltimore, Maryland 21201
jssimms@simmsshowers.com

and by first class mail, postage prepaid, on the following holders of liens filed with the United States Coast Guard:

| | |
|---|---|
| Avondale Industries, Inc. | Wilmington Trust Co., Trustee |
| P.O. Box 50280 | 1100 North Market Street |
| New Orleans, Louisiana 70150-0280 | Wilmington, Delaware 19890-1600 |

                                                                                        s/ Peter G. Myer
                                                                                        PETER G. MYER
                                                                                        Senior Trial Counsel